UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

New Cingular Wireless PCS, LLC,
        Plaintiff

        v.                                  Civil No. 09-cv-387-SM
                                            Opinion No. 2010 DNH 145
Town of Candia, New Hampshire;
and Zoning Board of Adjustment
of the Town of Candia,
        Defendants

**O R D E R**

The named plaintiff, New Cingular Wireless, PCS, LLC, is

wholly owned by the New AT&T, and prefers to be called "AT&T."

To fill a gap in cellular phone coverage, AT&T proposes to

construct a tower in Candia, New Hampshire.  Having been denied

both a special exception and a variance by the Candia Zoning

Board of Adjustment ("ZBA"), AT&T brought suit under the

Telecommunications Act of 1996, 47 U.S.C. § 151 et seq. (Counts

I-III), and section 677:4 of the New Hampshire Revised Statutes

Annotated (Count IV).  AT&T claims that the ZBA's decisions to

deny a special exception (Count I) and a variance (Count II) were

not supported by substantial evidence.  In Count III, it claims

that the ZBA's decisions result in an effective prohibition on

the extension of personal wireless services in an identified

coverage gap.  Before the court are cross motions for summary

judgment on Counts I and II.  Those motions were argued at a

hearing on June 25, 2010.  For the reasons given, AT&T's motion

for summary judgment is granted in part, defendants' summary
judgment motion is necessarily denied, and the case is remanded
for further proceedings.


**Summary Judgment Standard**

A summary judgment motion should be granted when the record
reveals "no genuine issue as to any material fact and . . . the
moving party is entitled to a judgment as a matter of law." FED.
R. CIV. P. 56(c).  "The object of summary judgment is to 'pierce
the boilerplate of the pleadings and assay the parties' proof in
order to determine whether trial is actually required.' " Dávila
v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12
(1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386
F.3d 5, 7 (1st Cir. 2004)).  When ruling on a party's motion for
summary judgment, a trial court "constru[es] the record in the
light most favorable to the nonmovant and resolv[es] all
reasonable inferences in [that] party's favor." Meuser v. Fed.
Express Corp., 564 F.3d 507, 515 (1st Cir. 2009) citing Rochester
Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.
2002)).


**Background**

AT&T seeks to construct a cell tower and associated
facilities at 606 North Road in Candia.  The tower is necessary,
it says, to fill a coverage gap in the northwestern part of

town.[1]  An unrelated 187-foot radio tower is currently on the site, which AT&T proposes to remove and replace with a new cell tower.  AT&T selected 606 North Road, at least in part, because the company thought it would prove less troublesome to replace an existing radio tower with a cell tower, than to construct a new cell tower in a location that had not previously had any tower at all.  (Certified Record (hereinafter "R."), at 286, 289.)

In its application for a special exception and a variance, AT&T proposed to construct a "180' high, multi-carrier galvanized steel lattice tower within a 75' x 75' fenced equipment area." (R. at 3.)  Subsequently, during the nearly nine months between AT&T's initial application and the ZBA's Notice of Decision, AT&T effectively amended its proposal by offering, alternatively, to build a tower of 150, 115, or 100 feet.  It also offered to build a monopole rather than a lattice tower.  In addition to proposing onsite alternatives, AT&T submitted an "Alternative Site Candidate Report," produced by its site-acquisition specialist, which addressed the suitability of four other potential tower sites within its search ring, as well as another site outside the search ring in which the ZBA had expressed interest.

To build a 180-foot tower at 606 North Road (or towers of 150 or 115 feet), AT&T must obtain both a special exception to

---

[1] Defendants do not contest the gap in coverage.

3

the Candia Zoning Ordinance (due to the site's location within
the Residential District), and a variance from the Ordinance's
tower set-back requirement.  A 100-foot tower, however, would
require only a special exception, because a tower of that height
meets the set-back requirement.  ZBA members expressed concern,
however, that a 100-foot tower would not be adequate to serve
other carriers, and risked encouraging a proliferation of shorter
towers in the town:

> It was discussed that if a 100' tower was approved that
> would open the door for other 100' towers.  F. Albert
> said voting on [a] 100' tower would not be doing the
> Town justice and that due diligence is required on the
> Town's part.  He suggested a continuance and to ask the
> applicant to investigate other sites more thoroughly.

(R. at 287.)  Later at that same meeting, Frank Albert moved "to
deliberate [AT&T's application] at the 100' tower height for a
special exception."  (Id. at 288.)  The motion failed for lack of
a second.  (Id.)

In a Notice of Decision, dated September 23, 2009, the ZBA
denied AT&T's application for a special exception for a 180-foot
tower, determining that AT&T had produced insufficient evidence
to support a finding, as required, that such a tower would not:
(1) be a detriment to property values in the vicinity; (2) change
the neighborhood on account of both its location or scale; or (3)
change the neighborhood on account of the noise it would

4

generate.[2]   The ZBA did not, however, simply determine that AT&T
had presented insufficient evidence to carry its burden of
proving entitlement to a special exception.   It also made
affirmative findings that: (1) "the proposed tower will cause a
detriment to property values" (R. at 192); (2) "the proposed
tower will have an adverse impact on the aesthetic quality of the
surrounding neighborhood" (R. at 193); and (3) "the potential
noise that may be generated from a compound at the proposed
location would change the surrounding neighborhood" (R. at 194).

_____

[2] An applicant for a special exception must meet the
following standards:

   1.   Standards provided by this Ordinance for the
        particular use permitted by Special Exception;

   2.   No hazard to the public or adjacent property on
        account of potential fire, explosion or release of
        toxic materials;

   3.   No detriment to property value in the vicinity or
        change in the neighborhood on account of the
        location or scale of buildings and other
        structures, parking areas, access ways, odor,
        smoke, gas, dust, or other pollutant, noise,
        glare, heat, vibration, or unsightly outdoor
        storage of equipment, vehicles or other materials;

   4.   No creation of a traffic safety hazard or a
        substantial increase in the level of traffic
        congestion in the vicinity;

   5.   No excessive demand on municipal services,
        including but not limited to water, sewer, waste
        disposal, police and fire protection, and schools;

   6.   No significant increase of storm water runoff onto
        adjacent property or streets.

(Candia Zoning Ord., Art. XIII, § 13.02.)

With respect to the lower towers AT&T offered to build, the ZBA said:

> While the Board understands that [AT&T] has expressed a willingness to reduce the height of its tower from between 150 to 100 feet, the Board finds that the evidence submitted is insufficient to establish whether a shorter tower would eliminate some, or all, of the problems outlined above.  Morever, while shorter towers may arguably minimize aesthetic impacts to nearby property owners, [AT&T] suggested that it may be less likely that other telecommunications companies will want to collocate on a shorter tower, which could result in the need for more towers throughout town, thereby raising additional aesthetic concerns in other parts of town.

(R. at 195.)  While that language is not clear, defendants stated, at the hearing, that the ZBA did, in fact, deny special exceptions for towers of 180, 150, 115, and 100 feet.  In denying special exceptions for the three lower towers, however, the ZBA did not specifically make the same affirmative findings it made for a 180-foot tower.

Simply, when the ZBA denied AT&T's request for a variance from the set-back requirement (on four separate grounds), it appears to have specifically addressed only a 180-foot tower.  But, it did identify AT&T's willingness to erect a 100-foot tower at 606 North Road as evidence that denial of a variance for the 180-foot tower at that location would not impose an unnecessary hardship on AT&T.  (R. at 197.)  The ZBA did not, however, explain how AT&T's willingness to build a 100-foot tower, for

which the ZBA had already denied a special exception, might
mitigate the hardship imposed by denying a variance for a 180-
foot tower.  In any event, notwithstanding that the Notice of
Decision does not expressly mention lower heights (i.e., 150 and
115 feet) when denying a variance, defendants conceded at oral
argument that the ZBA in fact denied variances for towers of 180,
150, and 115 feet.


## Discussion

Counts I and II of AT&T's complaint assert that the ZBA's
decision to deny special exceptions for all four proposed towers,
and its decision to deny variances for the three heights
requiring a variance, were not supported by substantial evidence.
Both parties move for summary judgment on that issue.


The court of appeals for this circuit has explained that:

> [T]hough state and local governments have the power "to
> deny . . . request[s] to place, construct, or modify
> personal wireless service facilities," their decisions
> must be "in writing and supported by substantial
> evidence contained in a written record."  47 U.S.C. §
> 332(c)(7)(B)(iii).  This balance strengthens the
> decision making authority of local zoning boards, while
> protecting wireless service providers from unsupported
> decisions that stymie the expansion of
> telecommunication technology.

ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir.
2002) (citing Brehmer v. Planning Bd., 238 F.3d 117, 122 (1st
Cir. 2001)).

"In this circuit, the [Telecommunications Act] is understood to impose two requirements on a local land use board.  First, the board must issue a written decision, and second, the board's decision must be supported by substantial evidence in a written record."  <u>ATC Realty, LLC v. Town of Sutton</u>, No. CV-01-046-M, 2002 WL 467132, at *5 (D.N.H. Mar. 7, 2002).  A board's "written denial must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons."  <u>Sw. Bell Mobile Sys., Inc. v. Todd</u>, 244 F.3d 51, 60 (1st Cir. 2001) (citing <u>Sprint Spectrum L.P. v. Town of N. Stonington</u>, 12 F. Supp. 2d 247, 252 (D. Conn. 1998)).  "[A] written denial, containing explanations, serves the additional purpose of providing an unsuccessful applicant with information that will assist him or her in crafting an acceptable subsequent application."  <u>Town of Sutton</u>, 2002 WL 467132, at *6.  As the court of appeals explained in <u>Town of Amherst v. Omnipoint Communications Enterprises, Inc.</u>:

> If the Board's position is that it can just sit back and deny all applications, that position in the end could, if maintained, prove fatal to the Board rather than Omnipoint.  Under federal law, the town can control the siting of facilities but – as several Board members admitted – it cannot preclude wireless service altogether.  Nor, in the face of a vigilant district court, can the town exhaust applicants by requiring successive applications without giving any clue of what will do the trick.

173 F.3d 9, 16-17 (1st Cir. 1999).

The ZBA's handling of AT&T's alternative proposals to build lower towers hints of the problem described in <u>Town of Amherst</u>. Throughout the application process, AT&T demonstrated a fair degree of flexibility and a willingness to work with the ZBA. The ZBA's response, however, was rather rigid.  Its reluctance to seriously consider AT&T's onsite alternatives,[3] and its push for collocation on a tower AT&T had identified as having "inferior and unacceptable coverage" based on radiofrequency criteria (<u>see</u> R. at 404),[4] hints of a general hostility to cell tower construction.

_____

[3] At the April 28 ZBA meeting, AT&T attempted to present information about onsite alternatives, including balloon tests for towers of 150, 125, and 100 feet, only to be told by the Chair of the ZBA that "the Board did not ask for onsite alternatives."  (Tr. at 286.)

[4] At its May 26 meeting, the ZBA granted Carleton Robie a special exception to construct a 180-foot monopole at 459 High Street.  (R. at 294.)  In her March 6 Alternate Site Candidate Report, AT&T's site acquisition specialist had ruled out Robie's (proposed) tower on radiofrequency grounds, noting that it was located half a mile outside AT&T's search ring and would provide unacceptable coverage.  (R. at 404.)  Yet, at the August 25 ZBA meeting, some members were still asking AT&T to consider collocation on Robie's tower.  (R. at 304.)

In addition, at the May 26 meeting, Robie's representative said he was "confident that if [Robie's] tower [was] built that [AT&T] will relocate to [Robie's] tower."  R. at 293.  It is not clear what effect that comment had on the ZBA's response to AT&T's proposal.  But, it seems that while the ZBA encouraged AT&T to collocate on Robie's tower (which, at the time of Robie's application had no carriers committed to it (R. at 293)), AT&T's application – which appears to have been pending when Robie filed his own application – had no negative effect on the ZBA's willingness to grant Robie a special exception.

Of primary relevance here, of course, is the ZBA's written denial of AT&T's application.  The Notice of Decision does not comply with the standard described in <u>Southwestern Bell</u>.  Denial of a special exception for towers of 150, 115, and 100 feet rests upon a conclusion that the evidence submitted was insufficient, but the decision, in the words of <u>Town of Amherst</u>, does not give "any clue of what will do the trick."  173 F.3d at 17.  Moreover, turning to the concern expressed in <u>Southwestern Bell</u>, the ZBA's decision also leaves this court without the ability "to evaluate the evidence in the record supporting [the ZBA's] reasons" for denying the application.  244 F.3d at 60.  Moving beyond the lack of adequate explanation, the ZBA's determination that the evidence before it was insufficient with respect to the alternative proposals is somewhat difficult to understand.  Surely the data on noise applied similarly to all four proposed towers,[5] as did the property-value data.  And, with respect to aesthetics, AT&T submitted balloon-test data for multiple heights.  So, it is not at all clear what else was necessary to permit a substantive (and explained) decision on the shorter tower alternatives.

---

[5] Defendants conceded at oral argument that the noise issue was moot, and no longer a factor, as the record does not support denial based upon anticipated noise [from the occasional operation of back-up electrical generators].

10

The ZBA's denial of a variance for 150' or 115' towers is even less enlightening than its denial of a special exception for towers of 150, 115 or 100 feet.

In sum, AT&T is entitled to judgment as a matter of law that the ZBA's Notice of Decision does not meet the statutory writing requirement, as construed in <u>Southwestern Bell</u>.  Thus, defendants are in violation of the Telecommunications Act, which entitles AT&T to summary judgment on Counts I and II.  See <u>Town of Sutton</u>, 2002 WL 467132, at *7.

AT&T is clear about the remedy it seeks: an order directing the Candia ZBA to grant the special exception and variance for which it applied.  And, indeed, "in the majority of cases the proper remedy for a zoning board decision that violates the Act will be an order . . . instructing the board to authorize construction."  <u>Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals</u>, 297 F.3d 14, 21-22 (1st Cir. 2002) (citing <u>Brehmer v. Planning Bd.</u>, 238 F.3d 117, 120-22 (1st Cir. 2001); <u>Cellular Tel. Co. v. Town of Oyster Bay</u>, 166 F.3d 490, 497 (2d Cir. 1999)).  On the other hand, however, "the appropriate remedy . . . may not always be an injunction, but may sometimes be a remand, depending on the nature of the board's decision and the circumstances of the case."  <u>National Tower</u>, 297 F.3d at 22.

11

While presenting a close question, the circumstances of this case counsel in favor of remand rather than injunction. The Candia ZBA has not demonstrated outright intransigence with respect to AT&T's application, and it hardly seems evident, on this record, that any further reasonable efforts by AT&T would prove utterly futile. AT&T presented four different proposals. An injunction ordering the ZBA to authorize construction must necessarily identify which of the four proposals carried the day. The Telecommunications Act, however, "is a deliberate compromise between two competing aims – to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers." Town of Amherst, 173 F.3d at 13. At this point, the court is reluctant to by-pass the parties' own judgment as to which proposal best meets their competing concerns. For example, while a variance is not required for a 100-foot tower, both AT&T and Candia may prefer a higher tower — one capable of serving multiple providers and thereby perhaps diminishing the need for additional towers in the future.

Accordingly, as in Town of Sutton, which also involved a local board's failure to provide an adequate written decision, see 2002 WL 467132, at *6, the better remedy here is a remand to the ZBA with instructions to promptly issue an adequate written decision with regard to each of the three remaining proposals, i.e., for towers of 150, 115, and 100 feet.

When the ZBA takes up those remaining proposals, it should bear in mind several things.  First, AT&T is entitled to erect a tower to fill its coverage gap.  Second, in the absence of a tower ordinance, neither the ZBA's belief that there might be a better location for AT&T's tower, nor the availability of Robie's tower, count as substantial evidence supporting the denial of a special exception for AT&T.  A denial for those reasons would violate the Telecommunications Act.  See Brehmer, 238 F.3d at 118.  Third, as discussed at the motions hearing, the ZBA's property-value and aesthetic rationales appear to be exceptionally weak.  Finally, when enacting the Telecommunications Act, "Congress made clear in two different provisions that it expected expeditious resolution both by the local authorities and by courts called upon to enforce the federal limitations." Town of Amherst, 173 F.3d at 17 n.8 (citations omitted).  Here, because two claims remain unresolved, in particular AT&T's effective prohibition claim, the case remains open and expeditious judicial review will be available to AT&T in the event of an unfavorable decision by the ZBA.

## Conclusion

For the reasons given, AT&T's motion for summary judgment (document no. 12) is granted in part, and defendants' summary judgment motion (document no. 14) is denied.  The matter is remanded for expeditious action by the Candia ZBA on AT&T's three

13

remaining proposals.  Further proceedings in this court are stayed pending the ZBA's action.

   **SO ORDERED.**

Steven J. McAuliffe
Chief Judge

August 11, 2010

cc:  Douglas H. Wilkins, Esq.
     Matthew R. Serge, Esq.