UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

New Cingular Wireless PCS, LLC,
    Plaintiff

    v.                                           Case No. 09-cv-387-SM
                                                     Opinion No. 2011 DNH 063
Town of Candia, New Hampshire,
and the Zoning Board of Adjustment
of the Town of Candia,
    Defendants

## O R D E R

New Cingular Wireless, PCS ("AT&T") seeks to construct a telecommunications tower and related facilities in Candia, New Hampshire, at the site of an existing (but unrelated) radio tower. Initially, AT&T applied for a special exception and a variance to construct a 180-foot lattice tower at the site, and proposed to remove the existing tower. Subsequently, however, it amended its applications, offering to build a monopole-style tower at a height of either 150, 115, or 100 feet. The Candia Zoning Board of Adjustment (the "Board") denied AT&T's applications.

By prior order, the court held that because the Board addressed only one of AT&T's four proposed tower heights (i.e., the 180-foot lattice tower), its decision to deny AT&T's applications for a special exception and a variance was not supported by substantial evidence. Order dated August 11, 2010

(document no. 23).  Rather than enter an order directing the Board to grant a special exception (and, depending on the height of the tower, a variance), the court instead remanded the matter to the ZBA for further proceedings.  In that remand order, the court instructed the Candia ZBA to "issue an adequate written decision with regard to each of the three remaining proposals, i.e., for towers of 150, 115, and 100 feet."  Id. at 12.

On remand, the Board granted AT&T's request for a special exception to the local zoning ordinance and authorized the construction of a 100-foot monopole telecommunications tower and related support facilities.  It also approved AT&T's request to employ a diesel generator at the site, to supply electrical power in case of outages.  The Board denied AT&T's proposed tower alternatives of 115 and 150 feet because, unlike the 100-foot tower, each of the taller towers would also require a variance from the "fall zone" setback provisions of the town's zoning ordinance.  And, said the Board, AT&T failed to meet its burden of proving entitlement to such a variance.

AT&T challenges the Board's latest decision, again saying it is not supported by substantial evidence.  See generally 47 U.S.C. § 332(c)(7)(B)(iii) of the Telecommunications Act of 1996 ("TCA"), Pub.L. No. 104-104, 110 Stat. 56 (codified as amended in scattered sections of 47 U.S.C.).  And, despite earlier

2

representations that it would be satisfied with a 100-foot tower, it now seeks a court order requiring the defendants to permit construction of a 120-foot monopole telecommunications tower.[1] Defendants object.

**Legal Background**

I.  The Telecommunications Act.

As the Supreme Court has observed, Congress enacted the Telecommunications Act of 1996:

> to promote competition and higher quality in American telecommunications services and to encourage the rapid deployment of new telecommunications technologies. One of the means by which it sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers.
>
> To this end, the TCA amended the Communications Act of 1934, to include § 332(c)(7), which imposes specific limitations on the traditional authority of state and local governments to regulate the location, construction, and modification of such facilities. Under this provision, local governments may not "unreasonably discriminate among providers of functionally equivalent services," take actions that "prohibit or have the effect of prohibiting the

---

[1] Although it applied to the Board for a 115-foot tower, AT&T asks this court to order defendants to allow it to construct a 120-foot tower, "for the simple expedient that monopoles are ordinarily manufactured in lengths divisible by 10." Plaintiff's memorandum (document no. 40) at 20, n. 14. The parties recently came to an agreement - of sorts - on this issue. They have stipulated that, if AT&T prevails in this forum, it should be permitted to construct a 120-foot tower. If, on the other hand, the Board prevails, AT&T will be permitted to construct the previously-approved 100-foot tower. See Stipulation for Entry of Final Judgment (document no. 42).

3

> provision of personal wireless services," or limit the placement of wireless facilities "on the basis of the environmental effects of radio frequency emissions." They must act on requests for authorization to locate wireless facilities "within a reasonable period of time," and each decision denying such a request must "be in writing and supported by substantial evidence contained in a written record."

City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 115-116 (2005) (citations and internal punctuation omitted).  Subject to the exceptions identified by the Supreme Court, however, the "TCA preserves state and local authority over the siting and construction of wireless communication facilities."  Second Generation Properties, L.P. v. Town of Pelham, 313 F.3d 620, 627 (1st Cir. 2002) (citing 47 U.S.C. § 332(c)(7)(B)).

At issue in this case is the TCA's requirement that the Board's decision be in writing and supported by substantial evidence.  47 U.S.C. § 332(c)(7)(B)(iii).  "If a board decision is not supported by substantial evidence, . . . then under the Supremacy Clause of the Constitution, the local law is pre-empted in order to effectuate the TCA's national policy goals."  Second Generation Properties, 313 F.3d at 627.[2]

---

[2] Although raised in its complaint as count 3, AT&T no longer contends that the Board's decisions amount to an effective prohibition of the provision of wireless services in Candia.  See generally 47 U.S.C. § 332(c)(7)(B)(i)(II).

II.  AT&T's Burden of Proof.

As noted above, in order to construct either a 115-foot or a 150-foot monopole tower at the site in question, AT&T must obtain a variance from the fall zone setback requirement of the Candia zoning ordinance. That ordinance provides:

> No buildings, roads or driveways that are not part of the tower site shall be built within 150% of the height of any tower that is located in any zone. Towers must be set back a distance equal to 150% of the height of the tower from any unaffiliated structure, parking areas or lots, driveways, roads, developed areas or property lines.

Town of Candia Zoning Ordinance, Article VI, Section 6.01(G).

To secure the required variance, AT&T bore the burden of showing, among other things, that literal enforcement of the ordinance would impose upon it an "unnecessary hardship." See, e.g., Garrison v. Town of Henniker, 154 N.H. 26, 30 (2006). See also Second Generation Properties, 313 F.3d at 628 ("In order to qualify for a variance under New Hampshire law, the landowner must show that meeting the normal zoning requirements poses an unnecessary hardship."). That, in turn, obligated AT&T to demonstrate that:

> (1) an area variance is needed to enable the applicant's proposed use of the property given the special conditions of the property; and (2) the benefit sought by the applicant cannot be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance.

Boccia v. City of Portsmouth, 151 N.H. 85, 94 (2004).[3]

Importantly, however, the New Hampshire Supreme Court has recognized that, in the context of an application for a cellular communications tower:

> To ensure compliance with the TCA, we believe that a broader, more inclusive view of hardship is required under these circumstances. When an application to build a wireless telecommunications tower is designed to fill a significant gap in coverage, the suitability of a specific parcel of land for that purpose should be considered for purposes of determining hardship. The fact that a proposed location is centrally located within the gap, has the correct topography, or is of an adequate size to effectively eliminate the gap in coverage, are factors that may make it unique under the umbrella of the TCA. Similarly, that there are no feasible alternatives to the proposed site may also make it unique. Thus, although a parcel of land may be similar to the surrounding properties in terms of its general characteristics, it may still be "unique" for purposes of hardship when considered in light of the TCA.

Daniels v. Town of Londonderry, 157 N.H. 519, 527 (2008).

As an aside, the court notes that to the extent AT&T argues that the Board bears the burden of demonstrating that its

---

[3] Parenthetically, the court notes that AT&T sought an "area," rather than a "use" variance. A "use" variance allows the property owner to undertake a use which the zoning ordinance prohibits, whereas an "area" or "nonuse" variance authorizes deviations from restrictions on a permitted use, such as restrictions on the size of buildings, their height, extent of lot coverage, and, as were at issue in this case, setbacks from property lines. See generally Boccia, 151 N.H. at 90-94.

decision was supported by substantial evidence, see Plaintiff's memorandum (document no. 40) at 7, n.6, it is quite mistaken. The law in this circuit is clear: under the TCA, AT&T bears the burden of proving that the Board's denials with respect to towers of 115 and 150 feet "lack adequate evidentiary support in the record." Southwestern Bell Mobile Sys. v. Todd, 244 F.3d 51, 63 (1st Cir. 2001).  See also USCOC of N.H. RSA #2, Inc. v. City of Concord, 2006 WL 2482010, 2006 D.N.H. 96 (D.N.H. Aug. 28, 2006) ("US Cellular bears the burden of showing that substantial evidence is lacking to support the Board's decision.").

III. The Board's Obligations.

In denying two of AT&T's proposed tower heights (i.e., 115 and 150), the Board was obligated to issue a written decision supported by substantial evidence in the record.  47 U.S.C. § 332(c)(7)(B)(iii).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966). The "substantial evidence" test is, then, "highly deferential to the local board." Second Generation Properties, 313 F.3d at 627.

See also *Id.* at 629 ("Local zoning boards are lay citizen boards, and while their decisions must be in writing, the boards need not make extensive factual findings in support of their ultimate decision.").

## Discussion

After four different attempts to adequately explain its decisions, it seems the ZBA finally got it right. *See* Second Amended Complaint, Exhibit E (document no. 36-5), Zoning Board of Adjustment Decision dated January 4, 2011. The Board explained, in some detail, the reasons for its decision to grant AT&T's request for a special exception to permit the construction of a 100-foot tower, and to deny its request for a variance to construct either a 115 or 150-foot tower. In short, the Board concluded that AT&T had not shown that it would suffer an unnecessary hardship, or that a gap in cellular coverage would exist, that could not be otherwise filled, if permission to construct a 115 or 150-foot tower on the subject property was denied:

> AT&T has not shown that the benefit sought cannot be achieved by some other method reasonably feasible for the applicant to pursue, other than an area variance. As explained previously in this decision, and other decisions, AT&T represented that if a variance were denied for a 115, 150, or 180-foot tower, it would erect a 100-foot tower, which would still meet some of the company's coverage needs. By proposing to site a smaller tower on the subject property, AT&T has

>     acknowledged that it can still receive a benefit from
>     the use without the need for a variance.

Id. at 6.  And, while a 100-foot tower likely provides less cellular coverage than would a taller tower, AT&T has not pointed to any evidence in the record disclosing the size of that difference in coverage or its location (e.g., areas of town that would be covered by a taller tower, but that would be without service from a 100-foot tower).  Nor has it identified any record evidence disclosing whether it will be necessary to close that resulting gap (e.g., whether it occurs in an occupied area, or whether it occurs in a remote area where coverage may not be necessary) or, if it is necessary to close that gap, its options for doing so (or lack thereof).  In summary, AT&T has not pointed to any record evidence suggesting how (or even if) it will suffer any harm by being permitted to construct only a 100-foot tower rather than the taller tower it seeks.

In light of the foregoing, the court cannot conclude that the Board's decision to authorize the construction of a 100-foot tower, but to deny AT&T's request for a taller tower (variance), lacks substantial support in the record.  The setback requirement of concern to the Board addresses safety issues, and the record does not suggest that those concerns must be compromised, and a variance allowed, to accommodate an otherwise unavoidable coverage gap.

## Conclusion

As at least one member of the Board seemed to appreciate, by allowing AT&T to construct only the 100-foot tower, and saving a few feet on top of the 100 foot tower, the Board has likely paved the way for construction of additional telecommunication towers in Candia to fill coverage gaps experienced by both AT&T and other carriers (who are, at least according to the record, unlikely to want to co-locate transmitters on that 100-foot tower).  That is, however, the Board's and town's prerogative. The question before the court is not whether the Board's decision is wise or consistent with its own best interests, but whether it is supported by substantial evidence in the record.  It is.

As noted above, the parties filed a "Stipulation for Entry of Final Judgment" (document no. 42) which is, in essence, a disclosed "high-low" agreement.  In the event the court rules in favor of AT&T, the parties have agreed that AT&T would be entitled to construct a 120-foot tower.  In the event the court rules in favor of the Board, the parties agreed that AT&T would be entitled to construct a 100-foot tower.  They also agreed that counts three and four of plaintiff's amended complaint would be dismissed, without prejudice and without costs.

Accordingly, the court enters the following order: Counts three and four of plaintiff's Second Amended Complaint (document

no. 36) are dismissed, without prejudice and without costs. Additionally, pursuant to the parties' stipulation:

1.  Defendants shall permit the Plaintiff to construct, operate, and maintain its wireless communication tower and facility (collectively the "Facility") at 606 North Road, Candia, New Hampshire ("Site"), subject to securing any other necessary relief from the Town of Candia such as site plan approval and a building permit, substantially in accordance with the Approved Plans identified below and in accordance with the terms and conditions of this order.

2.  The Approved Plans shall consist of the following plans prepared by Dewberry-Goodkind, Inc., dated March 20, 2009, previously submitted to the Board, which shall however be modified by AT&T to show the Court-approved Facility as including a 100-foot monopole-style tower:

| Sheet | Title |
|---|---|
| T01 | Title Sheet |
| G01 | General Notes |
| C01 | Abutters Plan |
| C02 | Site & Grading Plan |
| C03 | Detailed Site Plan and Elevation |
| C04 | Construction Details – I |
| C05 | Construction Details – II |
| C06 | Foundation Details & Antenna B.O.M. |
| C07 | TMA & Diplexer Details |
| E01 | Electrical Riser Diagram |
| E02 | Schematic Grounding Plan |
| E03 | Grounding Details |

3.   By this Final Judgment alone and without any further action or hearings of the Board being required, the Board is hereby adjudged to have issued all necessary and final zoning relief within its jurisdiction required for the construction of the Court-approved Facility as shown on the Approved Plans.

4.   The zoning amendments to the Town of Candia's telecommunications ordinance adopted at the 2011 town meeting shall not apply to the Court-approved Facility as it is currently presented and the Town of Candia, the Candia Board of Adjustment, and all Candia municipal boards, departments, and officials acting in concert with them shall not take any action that interferes with the implementation of this order granting zoning relief for the construction of the Court-approved Facility in accordance with the Approved Plans.  Nevertheless, this order does not alleviate AT&T's need to obtain other necessary relief required to construct the Court-approved Facility, including without limitation, site plan approval from the Town of Candia Planning Board and a building permit from the Town of Candia Building Department.  In reviewing further applications for other relief, the Town of Candia municipal boards, departments, and officials and all persons acting in concert with them will act as expeditiously as possible when reviewing those applications.

5. All references to the Plaintiff in this order shall include its members, successors and assigns.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

April 19, 2011

cc: Anne Robbins, Esq.
    Stephen D. Anderson, Esq.
    Matthew R. Serge, Esq.